**FEDERAL ELECTION COMMISSION, Plaintiff,**

v.

**TED HALEY CONGRESSIONAL COMMITTEE and Theodore R. Haley, Joanne Alger, Sallie Baine-Zimmer, Dona Carlson, George W. Edman, Frederick T. Haley and Richard G. Haley, Defendants.**

No. C85–1185TB.

United States District Court,
W.D. Washington,
at Tacoma.

Feb. 24, 1987.

1122

Eric F. Kleinfeld, Federal Election Commission, Washington, D.C., for plaintiff.

Jeffrey T. Haley, Simburg, Ketter, Haley, Sheppard & Purdy, Seattle, Wash., for defendants.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT and ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT; ORDER OF DISMISSAL

BRYAN, District Judge.

THESE MATTERS come before the court on:

(1) Plaintiff's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56(c); and

(2) Defendants' Motion for Partial Summary Judgment Dismissing Plaintiff's Claims for Declaratory Judgment and Civil Penalties Against the Defendants, pursuant to Fed.R.Civ.P. 56(c).

The court has reviewed the Motions, documents filed in support and opposition, and the file, and now concludes that plaintiff's motion should be denied, defendants' Motion for Partial Summary Judgment should be granted and this action should be dismissed.

## I. FACTUAL BACKGROUND

The following facts are not controverted:

This is a case filed by the Federal Election Commission in October of 1985, requesting declaratory, injunctive and monetary relief for alleged violations of the Federal Election Campaign Act of 1971, as amended. The defendants are the Ted Haley Congressional Committee, which was formed to run Theodore R. Haley's campaign for the Sixth District Congressional seat in the U.S. House of Representatives in 1982, as well as the former candidate, Ted Haley, and six other individuals who served as guarantors on a loan made to Ted Haley by Puget Sound National Bank for the purpose of retiring campaign debts of the Haley Committee.

Ted Haley lost the 1982 election and when the campaign was over, he had debts outstanding to printers, campaign consultants, campaign staff, and others. Several months after the election, when the committee was still unable to pay off its debts, Ted Haley obtained a personal loan for $50,000 from Puget Sound National Bank. The bank requested security for the loan and guarantees were provided by the six other defendants in the case. All six of these defendants have submitted affidavits stating they agree with the document entitled "Defendants' Statement of Material Facts," which states that prior to the 1982 general election none of them offered to guarantee loans to the Committee after the election, and that prior to the election no one connected with the campaign had any discussions with any of the defendants regarding loan guarantes. None of the defendants was approached regarding a loan guarantee until more than three months after the election was over, and none of them expected or intended that their loan

guarantees would influence any election for federal office. Haley has clearly indicated that he has no plans or intent to ever run for public office again. The defendants, as close friends and/or relatives of Mr. Haley, believed he would repay the loan out of his income as a surgeon and that there was no meaningful possibility that their guarantees would be called by the bank. The plaintiff has offered no evidence to controvert these assertions, and the court takes them as facts.

Four of the defendants (Fred Haley, Dona Carlson, Richard Haley and Joanne Alger) provided guarantees of $10,000; and two of the defendants (Sallie Baine-Zimmer and George Edman) provided guarantees of $5,000. The treasurer of the Haley Campaign Committee during the campaign and the time when the loan guarantees were made was one L.T. Murray, Jr. However, Ted Haley asserts Murray was treasurer in name only and that Haley fulfilled all duties of the treasurer both during the campaign and to date. (See first affidavit of Theodore R. Haley, Exhibit 1, Plaintiff's Motion for Summary Judgment.)

The loan from Puget Sound National Bank was made on March 11, 1983. Upon receiving it, Haley transferred the entire amount to the Haley Committee which used the funds to pay the campaign debts. The loan and the guarantees were reported to the Federal Election Commission by the Haley Congressional Committee in its 1983 mid-year report. Ted Haley repaid the loan in full from personal funds in four payments between March 31 and December 31, 1983.

On October 30, 1984 the Commission found reason to believe that the Haley Committee and its treasurer violated 2 U.S.C. § 441a(f) by accepting excessive contributions from defendants Joanne Alger, Sallie Baine-Zimmer, Dona Carlson, George W. Edman, Frederick T. Haley and Richard G. Haley. The Commission also found reason to believe that defendants Alger, Baine-Zimmer, Carlson, Edman, Frederick T. Haley and Richard G. Haley violated 2 U.S.C. § 441a(a)(1)(A) by making

excessive contributions to the Haley Committee. On July 30, 1985 the Commission authorized the initiation of this civil suit for relief in Federal District Court.

## II. LEGAL STANDARDS FOR GRANTING SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56(c)

 Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Evidence must be viewed in the light most favorable to the opposing party. *Gaines v. Haughton,* 645 F.2d 761, 769 (9th Cir.1981); *Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th Cir. 1985). When a district court is reviewing a decision of an administrative agency which is itself a finder of fact, summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did. *Occidental Engineering Company v. INS,* 753 F.2d 766, 770 (9th Cir.1985). After adequate time for discovery, summary judgment will be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. CASE LAW GUIDING THIS DISTRICT COURT'S REVIEW OF THE FEDERAL ELECTION COMMISSION'S STATUTORY INTERPRETATION

 In reviewing the Federal Election Commission's interpretation of 2 U.S.C. § 441a, the district court must give deference to the interpretation put on the statute by the agency. However, the courts are the final authority on issues of statutory construction, and they must reject administrative constructions of the statute, whether reached by adjudication or rule

making, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement. In this regard, the thoroughness, validity and consistency of an agency's reasoning are factors that bear upon the amount of deference to be given an agency's ruling. In determining whether the Commission's interpretation of § 441a was contrary to law, the task for the court is not to interpret such a provision as it thinks best, but rather to make a more narrow inquiry into whether the Commission's construction is sufficiently reasonable to be accepted by the reviewing court. To satisfy this standard it is not necessary for the court to find that agency's construction to be the only reasonable one or the same construction the court would have reached if the question had initially arisen in judicial proceeding. *Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 102 S.Ct. 38, 70 L.Ed.2d 23 (D.Colo.1981). A reviewing court shall hold unlawful and set aside an agency's action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, (2) contrary to constitutional right, power, privilege, or immunity, (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, (4) without observance of procedure required by law, (5) unsupported by substantial evidence or otherwise reviewed on the record of an agency hearing provided by statute or (6) unwarranted by the facts to the extent that the facts are subject to trial *de novo* by the reviewing court. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). 2 U.S.C. § 437g(a)(6)(B) requires a *de novo* hearing by the district court on the issue of whether the Commission has established that the person involved in such civil action has committed a violation of the Act. *See also Federal Election Commission v. California Medical Assoc., et al.*, 502 F.Supp. 196 (D.C.N.D.Calif.1980), in which a civil enforcement action instituted by the Federal Election Commission for alleged violation of 2 U.S.C. § 441a(a)(1)(C), was tried to the court upon stipulated facts as well as supplementary testimonial and documentary evidence.

## IV. STATUTES AND CODE PROVISIONS APPLICABLE IN THE MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs assert that defendants are clearly in violation of the law set forth in 2 U.S.C. § 441a(a)(1)(A), which provides:

### (a) Dollar limits on contributions

(1) No person shall make contributions—

(A) to any candidate and his authorized political committees with respect to any election for Federal office which, in the aggregate, exceed $1,000;

. . .

Plaintiff also asserts that Ted Haley and his political committee are clearly in violation of 2 U.S.C. § 441a(f), which provides:

### Prohibited contributions and expenditures

No candidate or political committee shall knowingly accept any contribution or make any expenditure in violation of the provisions of this section. No officer or employee of a political committee shall knowingly accept a contribution made for the benefit or use of a candidate, or knowingly make any expenditure on behalf of a candidate, in violation of any limitation imposed on contributions and expenditures under this section.

2 U.S.C. § 431 provides these definitions for relevant terms in the Act:

(1) The term "election" means—

(A) a general, special, primary, or run-off election;

(B) a convention or caucus of a political party which has authority to nominate a candidate;

(C) a primary election held for the selection of delegates to a national nominating convention of a political party; and

(D) a primary election held for the expression of a preference for the nomi-

nation of individuals for election to the office of President.

(2) The term "candidate" means an individual who seeks nomination for election, or election, to Federal office, and for purposes of this paragraph, an individual shall be deemed to seek nomination for election, or election—

(A) if such individual has received contributions aggregating in excess of $5,000 or has made expenditures aggregating in excess of $5,000; ...

(8)(A) The term "contribution" includes—

(i) any gift, subscription, loan, advance, or deposit of money or anything of value made by any person **for the purpose of influencing any election** for Federal office; ...

(B) The term "contribution" does not include—

(vii) any loan of money by a State bank, ... but such loan—

(I) shall be considered a loan by each endorser or guarantor, in that proportion of the unpaid balance that each endorser or guarantor bears to the total number of endorsers or guarantors; ... (Emphasis added.)

In addition, 11 C.F.R. § 110.1(g)(2) provides that:

Contributions made to retire debts resulting from elections held after December 31, 1974 are subject to the limitations.

## V. DISCUSSION AND CONCLUSIONS

The FEC argues 11 C.F.R. § 110.1(g)(2) makes it clear that the contribution limitations apply to campaign debts as well as to all major campaign activities, and that defendants therefore violated the law in making and accepting contributions for the express purpose of paying expenses incurred in Ted Haley's primary and general election campaigns for federal office. The FEC further argues that contributions made both before and after an election are made "for the purpose of influencing that election" because otherwise candidates could run their campaigns at a deficit and then collect excessive contributions after the

election, thereby thwarting the purpose and intent of the law.

Defendants counter by arguing that the FEC's position ignores an essential element of any claim under the Act, that is, whether the contributions were *in fact* made "for the purpose of influencing any election for federal office," and that they have submitted uncontroverted evidence to show the loan guarantees were made not for the purpose of influencing an election, but for the purpose of paying off debts which remained after the election. Therefore, defendants argue, the guarantees were not "contributions" under the Act.

Defendants further argue there is no rationale for imposing the civil penalties requested by plaintiff. Defendants submit there has been no violation of the statute, and that because the loan has been fully repaid civil penalties would have no corrective effect.

A. *Whether the loan guarantees solicited by Ted Haley three months after the election in order to pay debts incurred by his campaign committee were made by the six defendants for the purpose of influencing the election, and were accepted by defendants Haley and the Committee for that purpose.* This issue is central to the case. Defendants contend these loan guarantees could not have been made for the purpose of influencing the election when no solicitation was made nor any guarantee volunteered prior to three months after the election, and no future elections were contemplated. Defendants further contend that *in fact*, the guarantees were not made for the purpose of influencing any election. As mentioned above in the court's Factual Background, the plaintiff has presented no evidence to controvert these assertions.

The FEC claims that its advisory opinions make it clear that it considers monies received to satisfy any outstanding campaign debts to be contributions, and as such, subject to the same treatment as any other contribution. However, this court, in this *de novo* review of the FEC's determi-

nation, must review the facts presented to determine whether the facts support the agency's interpretation and application of the statute, as supplemented by the CFR.

■ The court is satisfied that the Act may apply to guarantees of loans made after an election. However, even if the unpaid balance of a loan guarantee *may* be a "contribution," pursuant to 2 U.S.C. § 431(8)(B)(vii)(I); and even if guarantees made to retire debts resulting from elections are subject to the Act pursuant to 11 C.F.R. § 110.1(g)(2); such a guarantee is not a "contribution" under the Act unless it is made for the purpose of influencing any election for federal office, pursuant to 2 U.S.C. § 431(8)(A)(i).

Judge Orrick, in his opinion in *Federal Election Commission v. California Medical Association*, 502 F.Supp. 196, 201 (D.C. N.D.Calif.1980) discusses three methods of determining whether contributions were made for the purpose of influencing federal elections. Two of the methods are relevant here. Judge Orrick's analysis is helpful in applying the law in this case. The two methods are as follows:

1. presume the contributions were made for the purpose of influencing elections. The burden then shifts to defendants to rebut the presumption.

2. require the FEC to prove that each contribution was made with the intent to influence a federal election. *Id.* at p. 201.

■ For purposes of deciding this case, this court rejects the second method of analysis, as did Judge Orrick. It would be unreasonable to require the FEC to prove, as a threshold showing, that no secret advance deals had been made to extinguish lingering campaign debts. The danger of before- or after-the-fact shenanigans is real, and this court shares the government's concern that to require proof of intent to make out a *prima facie* case

would be an unreasonably strict construction of the statute. On the other hand, if Congress had wanted to *absolutely prohibit* the kind of post-election loan guarantees we find in the case at bar, that prohibition would have been expressed in a route less circuitous than the one the FEC has taken in stringing these statutes and regulations together. Judge Orrick's first method of analysis is the better one.

■ Post-election loan guarantees, such as those made here, are presumptively for the purpose of influencing an election under the statute and regulation. This presumption, however, is not *conclusive,* but *rebuttable.* It simply allows the FEC to shift the burden of proof to defendants after a minimal showing. The defendants then have the opportunity to rebut, and overcome, the presumption if they can. Defendants here attempt to rebut and overcome the plaintiff's presumption by showing that the material facts are not in issue, and that those facts lead to the legal conclusion that the guarantees in issue were not for the purpose of influencing any election. This the defendants have done. They have successfully rebutted the presumption that their loan guarantees were made, or accepted, for the purpose of influencing a federal election campaign. Defendants' uncontroverted affidavit testimony as to the timing of solicitation, the nature of the relationships between Haley and the guarantors, their intent in making and accepting the guarantees and the facts and circumstances of Haley's payment of the loan combine to rebut the presumption that loan guarantees were made to influence the election.[1]

Plaintiff's Motion for Summary Judgment is based on the idea, although not stated in this fashion, that the presumption that after election loan guarantees are made for the purpose of influencing an election is a *conclusive* presumption.

---

1. Both counsel have advised the court that all of the evidence available has been presented in support of or opposition to these motions, and that no additional evidence would be presented in the event of a trial. Therefore, even if the

presumption alone was sufficient to raise a material fact issue, it is clear that the plaintiff would not prevail at trial in the face of defendants' overwhelming rebuttal evidence.

There is no support in the law for such a conclusion.

The court next must apply appropriate standards for summary judgment motions and review of the FEC's statutory interpretation, as discussed in sections II and III above. Following my *de novo* review of the facts pursuant to 2 U.S.C. § 437g(a)(6)(B), the court must reject the FEC's construction of the statutes applied to this case as being not in accordance with law, in excess of statutory limitations, and unwarranted by the facts according to the test set out in *Citizens to Preserve Overton Park v. Volpe, supra*. Summary judgment is an appropriate tool for disposing of the issue at hand. *Occidental Engineering Co. v. INS, supra*. In light of defendants' evidence, the FEC's reliance on a presumption fails to make a sufficient showing of defendants' intent to influence a federal election, which is an element essential to its case. *Celotex Corp. v. Catrett, supra*.

For the foregoing reasons, this court must deny the FEC's Motion for Summary Judgment, and grant defendants' Motion for Partial Summary Judgment dismissing the plaintiff's claim for declaratory judgment.

B. *Defendants' Motion for Partial Summary Judgment as to civil penalties against the defendants.* Civil penalties pursuant to 2 U.S.C. § 437g(a)(6)(B) may not be assessed against the defendants when this court has found no violation of the Act. However, even if, using the *Federal Election Commission v. California Medical Assn.* analysis, the presumption of intent to influence was found to be a conclusive presumption instead of a rebuttable presumption, I would not assess civil penalties against these defendants. The circumstances of their candid reporting of the loan guarantees, the rapid repayment of the loan by the former candidate from personal funds, and the clear innocence of their motives, leave no justifiable grounds for assessment of penalties.

Even though the defendants here requested only a "partial" summary judgment on the plaintiff's claims for declaratory judgment and civil penalties, the remaining claims of plaintiff for "injunctive and other appropriate" relief are clearly moot in light of the court's ruling. Therefore, defendants are entitled not only to a granting of their Motion for Partial Summary Judgment, but to a complete dismissal.

### ORDER

For the foregoing reasons it is now ORDERED

(1) Plaintiff's Motion for Summary Judgment is DENIED;

(2) Defendants' Motion for Partial Summary Judgment as to plaintiff's claims for declaratory judgment is GRANTED;

(3) Defendants' Motion for Partial Summary Judgment as to plaintiff's claims for civil penalties against defendants is GRANTED.

(4) This case is hereby DISMISSED with prejudice.

The Clerk of this Court is instructed to send uncertified copies of this Order to all counsel of record.