**FEDERAL ELECTION COMMISSION, Plaintiff–Appellant,**

v.

**TED HALEY CONGRESSIONAL COM-MITTEE; Theodore R. Haley; Joanne Alger; Sallie Baine; Dona Carlson; George W. Edman; Frederick T. Haley; Richard G. Haley, Defendants–Appellees.**

Nos. 87–3867, 87–4248.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1988.

Decided July 22, 1988.

**1112**

Lawrence M. Noble, Richard B. Bader, and Jacqueline Jones–Smith, Washington, D.C., for plaintiff-appellant.

Jonathan I. Feil, Simburg, Ketter, Haley, Sheppard & Purdy, Seattle, Wash., for defendants-appellees.

Before WRIGHT, BRUNETTI, and TROTT, Circuit Judges.

BRUNETTI, Circuit Judge:

The parties in this appeal are plaintiff/appellant Federal Election Commission (FEC) and defendant/appellee Ted Haley Congressional Committee (committee). There are also various individual defendants/appellees, who made alleged contributions to the committee.

Theodore R. Haley (Haley) ran unsuccessfully in the November 1982 general election for the Sixth District Congressional Seat in the United States House of Representatives. Following the campaign the committee still had outstanding debts to printers, campaign consultants, campaign staff and others. In March 1983 Haley obtained a personal loan for $50,000 from Puget Sound National Bank, and upon receiving the loan proceeds transferred the entire amount to the committee which used the funds to pay the campaign debts.

As a requisite to granting the loan the bank requested security for the loan, and at Haley's request, loan guarantees were provided by the six individual defendants/appellees. Four of the individuals provided guarantees of $10,000 and two provided guarantees of $5,000. All of the defendants/appellees submitted affidavits affirming that prior to the election none of them offered to guarantee loans to the committee after the election and that prior to the election no one connected with the campaign had any discussions with them regarding loan guarantees. These affidavits also stated that none of the appellees was approached regarding a loan guarantee until more than three months after the election was over and none of them expected or intended that their loan guarantees would influence any election for federal office. Haley indicated that he would not be a candidate for public office again. The appellees believed that Haley could and would repay the loan and would do so out of his income as a surgeon. The individual appellees had also made cash dollar contributions to the committee prior to the election.

The loan and the guarantees were reported to the FEC by the committee in its 1983 midyear report. Haley repaid the loan in full from personal funds in four payments between March 31 and December 31, 1983.

On October 30, 1984 the FEC found reason to believe that the appellees violated provisions of the Federal Election Campaign Act of 1971 (FECA) pertaining to the campaign contribution limitation of $1000 per contributor. Appellees were notified of the FEC's actions by letters dated November 7, 1984. The FEC's general counsel notified appellees by letters dated February 14, 1985 that the general counsel was prepared to recommend that the FEC find probable cause to believe that violations of FECA by appellees had occurred. On April 30, 1985 the FEC found that probable cause existed. Appellees were notified of that finding by letters dated May 6, 1985. The FEC was unable through informal methods to secure an acceptable conciliation agreement with appellees. Thus, on July 30, 1985 the FEC authorized the initiation of a civil suit.

On November 7, 1985 the FEC filed this civil suit in the United States District Court for the Western District of Washington. The complaint alleged that the loan guarantees made by the individual appellees constituted contributions under FECA and as such violated FECA's prohibition on contributions in excess of $1,000. The appellees answered on February 24, 1986.

On December 1, 1986 the FEC moved for summary judgment. On December 22 appellees moved for partial summary judgment. Judge Bryan, granting appellees' motion for summary judgment, found that

the loan guarantees made by the individual appellees were not contributions under FECA unless made for the purpose of influencing any election for federal office. The district court found that the FEC failed to show that appellees had the intent to influence a federal election, and that even if there were a violation of FECA, it would decline to assess civil penalties because of the "rapid repayment of the loan" and the "clear innocence" of the appellees' motives. *FEC v. Ted Haley Congressional Committee,* 654 F.Supp. 1120, 1127 (W.D.Wash.1987).

*FECA Liability*

 FECA, as codified at 2 U.S.C. § 431 et seq. is the regulatory scheme providing for limits on campaign contributions. It also provides guidelines on record keeping and reporting requirements. 2 U.S.C. § 441a(a)(1)(A) provides that:

> No person shall make contributions to any candidate and his authorized political committees with respect to any election for Federal office which, in the aggregate exceed $1,000.

> Title 2 U.S.C. § 441a(f) provides that: No candidate or political committee shall knowingly accept any contribution or make any expenditure in violation of the provisions of this section. No officer or employee of a political committee shall knowingly accept a contribution made for the benefit or use of a candidate, ... in violation of any limitation imposed on contributions and expenditures under this section.

FECA defines the term contribution to include:

> any gift, subscription loan, advance or deposit of money or anything of value made by any person *for the purpose of influencing any election for Federal office.*

2 U.S.C. § 431(8)(A) (emphasis added). A bank loan "shall be considered a loan by each endorser or guarantor ..."

2 U.S.C. § 431(8)(B)(vii)(I).

> The Act also provides that:
> Any candidate [for Federal office] who receives a contribution or any loan for use in connection with the campaign of such candidate for election ... shall be considered, for purposes of this Act, as having received the contribution or loan ... as an agent of the authorized committee or committees of such candidate.

2 U.S.C. § 432(e)(2).

Regulations promulgated pursuant to FECA provide that "the term 'loan' includes a guarantee, endorsement and any other form of security." 11 C.F.R. § 100.7(a)(1)(i). Those regulations further provide that:

> (A) A loan which exceeds the contribution limitations ... shall be unlawful whether or not it is repaid.

> (B) A loan is a contribution at the time it is made and is a contribution to the extent that it remains unpaid. The aggregate amount loaned to a candidate or committee by a contributor, when added to other contributions from that individual to that candidate or committee, shall not exceed the contribution limitations [of 2 U.S.C. § 441a(a)(1)].

*Chevron, USA, Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), provides our standard of review:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. at 842–43, 104 S.Ct. at 2781–82.

 The judiciary is the final authority on issues of statutory construction and we

must reject administrative constructions which are contrary to clear congressional intent. *Id.* at 842–43 n. 9, 104 S.Ct. at 2781 n. 9. *See also FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1982).

"The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Id.* at 843, 104 S.Ct. at 2782 (quoting *Morton v. Ruiz*, 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974)).

"[T]he interpretation of statutes and regulations by an agency charged with their administration is entitled to due deference and should be accepted unless demonstrably irrational or clearly contrary to the plain meaning." *Nevitt v. United States*, 828 F.2d 1405, 1406–7 (9th Cir.1987).

The Supreme Court has held that the FEC is vested by Congress with primary and substantial responsibility for administering and enforcing FECA and that the Commission is provided with extensive rule making and adjudicative powers. *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. at 37, 102 S.Ct. at 45 (citations omitted). The Supreme Court also held in that case that the FEC "is precisely the type of agency to which deference should presumptively be afforded." *Id.*

In our review of FECA we must first isolate the precise question at issue. The individual appellees made various cash dollar contributions to the committee. Each of the six made a loan guarantee to enable Haley to obtain the loan from Puget Sound National Bank, and the loan guarantees are contributions under FECA. 11 C.F.R. § 100.7(a)(1)(i). Those loan guarantees standing alone *and* taken in the aggregate with the appellees cash dollar contributions exceed the $1,000 limitation of FECA. 2 U.S.C. § 441a(a)(1)(A). Likewise the committee's acceptance of the loan, the concomitant loan guarantees and the cash contributions also exceed the limitations on political committees stated at 2 U.S.C. § 441a(f).

However, whether these contributions are violations of FECA requires a determination that they were made "for the purpose of influencing an election for federal office." 2 U.S.C. § 431(8)(A). We now address that issue.

Congress has failed to affirmatively define what is meant by "for the purpose of influencing an election for federal office", and has further failed to state whether post-election contributions (in this case in the form of personal loan guarantees) are subject to the $1000 limitation of FECA. A plain meaning cannot be discerned from the language of the statute, 2 U.S.C. § 431(8)(A), and there is no legislative history to guide this court in determining the scope of the critical phrase. Thus, under *Chevron, supra*, since Congress did not address the precise question at issue, leaving Congressional intent unclear, we may not impose our own construction. Rather this court must determine whether the FEC's interpretation of FECA regarding post-election contributions is a permissible construction.

In 1976 the FEC promulgated the following regulation: "Contributions made to retire debts resulting from elections held after December 31, 1974 are subject to the limitations [of these regulations]." 11 C.F.R. § 110.1(g). This regulation was submitted to Congress for approval in 1976, pursuant to 2 U.S.C. § 438(d)(1). Congress failed to disapprove the regulation which "strongly implies that the regulations accurately reflect congressional intent." *Grove City College v. Bell*, 465 U.S. 555, 568, 104 S.Ct. 1211, 1219, 79 L.Ed.2d 516 (1974). *Accord FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. at 34–35, 102 S.Ct. at 43–44 (Congress' failure to disapprove regulation is an "indication that Congress does not look unfavorably" upon the FEC's construction of FECA). Moreover, though Congress has made other changes in the definition of "contribution", it has not added a definition of "for the purpose of influencing an election for federal office" nor did it create an exception for post-election contributions. Congress' acquiescence is made more concrete in view

of several advisory opinions the FEC has issued on the subject.

In a 1983 advisory opinion the FEC stated that "[t]he Commission in both its regulations and prior advisory opinions has emphasized that funds raised after an election to retire election campaign debts are just as much for the purpose of influencing an election and in connection with the election as are those contributions received before the election." *Advisory Opinion 1983–2, 1 Fed.Elec.Camp.Fin.Guide [CCH] ¶ 5709 (February 24, 1983).* In a 1981 Advisory Opinion the FEC told the Carter/Mondale Presidential Committee that monies raised to defray the costs of post-election FECA-compliance litigation was "analogous to a debt situation" and the fact that the donations involved post-election litigation did not remove them from the definition of "contributions". The committee specified that its post-election solicitations for donations to this litigation fund would state that "donations will not be used for the purpose of influencing any election", and that each donor would be asked to sign a donation card that would state "this donation is not given for the purpose of influencing any election." The FEC concluded that "monies received to defray the cost of post-election litigation which arises out of the election are treated the same as monies received to defray the cost of litigation during the election". The FEC ruled that such contributions would be subject to the limitations and prohibitions of FECA, specifically, 11 C.F.R. § 110.1(g)(2). *Advisory Opinion 1981–16, 1 Fed.Elec.Camp.Fin. Guide [CCH] ¶ 5604 (April 15, 1981). See also Advisory Opinion 1979–1, 1 Fed.Elec. Camp.Fin.Guide [CCH] ¶ 5389 (February 9, 1979); Advisory Opinion 1981–22, 1 Fed.Elec.Camp.Fin.Guide [CCH] ¶ 5608 (May 29, 1981).*

■ This interpretation of FECA by the FEC through its regulations and advisory opinions is entitled to due deference and is to be accepted by the court unless demonstrably irrational or clearly contrary to the plain meaning of the statute. The appellees have failed to demonstrate that the FEC's interpretation is irrational or that it is clearly contrary to the plain meaning of FECA. The FEC's interpretation on post-election loan guarantees falling within the purview of the statute's contribution ceilings is a permissible construction. *Chevron,* 467 U.S. at 844–45, 104 S.Ct. at 2782–83.

The district court erred when it substituted its interpretation of the statute and regulations rather than giving deference to the FEC's interpretation of its enabling statute and its own promulgated regulations and advisory opinions. FECA's purposes do not indicate that Congress disapproves of the FEC's interpretation in this case. Because the FEC's interpretation is a reasonable choice within a gap left open by Congress, appellees challenge must fail. *Orloski v. FEC,* 795 F.2d 156, 167 (D.C.Cir.1986) quoting *Chevron,* 467 U.S. at 866, 104 S.Ct. at 2793. "Any complaints about the wisdom of that interpretation are properly directed to the legislature, not this court." *Id.*

Appellees' arguments concerning the interpretation of "for the purpose of influencing" language are unavailing. The appellees suggest that neither the FEC's regulations nor its advisory opinions justify the FEC in ignoring the purpose of the "influencing" requirement. They further argue that the guarantees in this case, defined as a contribution in 11 C.F.R. § 100.7(a)(1)(i), were not contributions prohibited from being used to retire campaign debts under 11 C.F.R. § 110.1(g). Appellees suggest that it is unambiguous that the guarantees were not made for the purpose of influencing any federal election. The FEC has regarded loan guarantees and post election donations as contributions in its advisory opinions. The appellees *cannot* choose to ignore that interpretation of the regulatory scheme and urge this court to substitute its own construction for that of the FEC.

The appellees urge that this court give deference to the analysis of the facts performed by the district court, though they acknowledge de novo as the standard of review. *Siles v. ILGWU Retirement Fund,* 783 F.2d 923 (9th Cir.1986). The

real deference that is due though is not to the district court but to the interpretation of the statute by the agency—the FEC.

Appellees argue that the FEC should have established a "purpose based objective guideline" which would be applicable to this case. Such a test would necessarily depend upon the subjective state of mind of the actor involved and would make it next to impossible to police the statute. The fact remains that no such test was promulgated and this court cannot fill the gap—a gap that should be filled by the FEC or Congress, but not the courts.

The district court's and appellees' reliance on *FEC v. California Medical Ass'n*, 502 F.Supp. 196 (N.D.Cal.1980) is misplaced. First, Judge Orrick in that case did not adopt a rebuttable presumption test, as appellees suggest, because he concluded that the defendants would have violated FECA under either of the two tests considered. Second, the issue in that case was different in that it concerned contributions to a political action committee which used the funds for other purposes as well as financing federal elections. The court was trying to classify contributions which had been made to the committee but were not earmarked for any particular use where the committee used a portion of the funds for activities unconnected to federal elections. By contrast this case concerns contributions to a candidate committee whose sole purpose for existence was to support the election of a single candidate for federal office, which funds were used to retire campaign expenses. Judge Orrick did not discuss the status of post-election contributions for the purpose of retiring a candidate's campaign debt. The FEC, on the other hand, has addressed this issue in its advisory opinions. Also, Judge Orrick did not reject the longstanding FEC construction of FECA and its own regulations as the district court did in this case.

We find compelling the holding in *FEC v. Lance*, 617 F.2d 365 (5th Cir.1980), *cert. denied*, 453 U.S. 917, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981). In *Lance* the Fifth Circuit addressed the situation of what might happen if post-election contributions

for the purpose of retiring campaign debts were not subject to FECA's contribution limits. The court stated that if that were the case "it would permit candidates to evade FECA's restrictions on contributions and expenditures by running their campaigns at a deficit and then collecting contributions after the election." *Id.* at 372 n. 4.

Though not espousing a principle of law squarely on point with this case, the scenario *Lance* suggests would make meaningless the purpose of campaign contribution limits.

Accordingly, we reverse the finding of the district court that these post-election loan guarantees did not violate FECA.

*Civil Penalties*

■ The FEC sought approximately $85,000 in civil penalties under 437g(a)(6)(B). The district court concluded that even if intent to influence were found, it would not assess civil penalties. In reaching that conclusion the court held that "[t]he circumstances of [appellees'] candid reporting of the loan guarantees, the rapid repayment of the loan by the former candidate from personal funds and the clear innocence of [appellees'] motives leaves no justifiable grounds for assessment of penalties." 654 F.Supp. at 1127.

■ The assessment of civil penalties is discretionary. 2 U.S.C. § 437g(a)(6)(B). A court's decision on civil penalties is reviewed under an abuse of discretion standard, *AFL–CIO v. FEC*, 628 F.2d 97, 100 (D.C.Cir.1980). The district court's discretionary exercises, however, must be guided by sound legal principles, *Id.*

In *FEC v. National Education Ass'n*, 457 F.Supp. 1102, 1112 (D.D.C.1978), the court found a civil penalty unwarranted. The court held that the expense the NEA would incur from refunding monies illegally collected for political contributions from dues assessments would be enough of a penalty. In *FEC v. Gus Savage for Congress '82 Comm.*, 606 F.Supp. 541, 548 (N.D.Ill.1985), the court found no grounds for imposing civil penalties because the defendant had already incurred great person-

al cost by having to hire a lawyer and an accountant.

Because the district judge has already considered the propriety for civil penalties under the facts presented to him, we find no abuse of his discretion and we do not disturb that finding and conclusion.

*Attorneys' Fees*

In the action below the appellees applied for and were granted attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. The district court found that appellees were the prevailing party. As we have reversed the district court on its finding of no liability under FECA, the appellees are no longer the prevailing party. Accordingly, we vacate the district court's award of attorney's fees. The parties will bear their own costs of this litigation and of this appeal.

REVERSED AND REMANDED.